## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

**DEBORAH LAUFER**

**v.**                                    **Case No.: 5:20-cv-356-BKS-ML**

**RAM, INC.**


### PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S
### MEMORANDUM OF LAW IN OPPOSITION TO STANDING

Attorney For Plaintiff:
Peter Sverd
Law Offices of Peter Sverd, PLLC
225 Broadway
Suite 613
New York, NY 10007
646-751-8743
Email: psverd@sverdlawfirm.com

## TABLE OF CONTENTS

I. PROCEDURALBACKGROUND…………………………………………..………1-2

II. DEFENDANTS ARGUMENTS ARE WITHOUT MERIT……………………..……………2

A.    Defendant's Argument That Plaintiff Must Have Intended To Book

A Room Is Without Merit…………………………………………………..…………..2

          1.    The Law Clearly Does Not Require Intent To Book A Room…………3-6

          2.    Physical Property Cases Are Irrelevant……………………………...6-7

          3.    Reliance On The Griffin Case Is Improper……………………………7-11

          4.    Spokeo Does Not Diminish Plaintiff's Rights…………………..…………11

              a. Havens Realty Remains On Point And Applicable………….……11-13

              b. The "Injury" At Issue In Spokeo Starkly Contrasts
              With The Plaintiff's Injury…………………………………………..13-15

B.    Plaintiff Satisfies Even The Intent-To-Book-A-Room Requirement ……….15-17

C.    Defendant's Claims Regarding ORS Compliance Are Meritless………..…17-24

III.    CONCLUSION…………………………………………..……..………………25

## TABLE OF AUTHORITIES

**Cases**

*Access For America, Inc. v. Zicheck Investments, Ltd.*, Case No. 8:01-cv-2228, DE 51,
p. 4  (M.D.Fla. 3/13/2003)……………………………………….…………………18

*Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 228 (2008)………………….………..………….4

*Barnes v. Marriott Hotel Servs., Inc.*, 2017 U.S. Dist. Lexis 22588 (N.D.Cal. 2017)……..……23
*Brooke v. A-Ventures, LLC*, 2017 U.S. Dist. LEXIS 193259 (D. Ariz. 2017)………..…………...20
*Bryan v. Florencia Park*, LLC, 2019 U.S. Dist. Lexis 156684, * 7 (M.D.Fla. 2019)………..…16

*Camacho v. Vanderbilt University* 2019 WL 6528974 (S.D.N.Y. 2019)…………..………...…7

*City News & Novelty, Inc*. *v*. *City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)………………..…19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)……………………………….…………19

*Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*,
765 F.3d 1205, 1211 (10th Cir. 2014)……………………………………..……………...…6

*Feltzin v. Triangle Properties #1, LLC*, 2016 U.S. Dist Lexis 192681 (E.D. N.Y. Dec. 2016)…..5
*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2000)……………..…19

*Gonzalez v. Bahar Corp.*, 2019 U.S. Dist. Lexis 58567  (E.D.N.Y. 2019)……………………..16

*Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019)………………*In passim*
*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987)……....19
*Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2nd Cir. 6/29/2011)………………6

*Havens Realty, 455 U.S.* 363 (1982)……………………………………………………*In passim*
*Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)………………………7
In *Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018)…………………………………19
*Hernandez v. Caesars License Co., LLC*, 2019 U.S. Dist. Lexis 172456 (D.N. J. 2019)…………5
*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013). ………………………….4
*Houston v. 7-Eleven, Inc.*, 2014 U.S. Dist. LEXIS 12209 (S.D. Fla. 1/31/2014)………..………21

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987) ……………………………………………4
*Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019)……5,16,24
*Kennedy v. Floridian Motel, Inc.*, 2018 U.S. Dist. Lexis 207984, fn. 3 (S.D. Fla. 2018)………..20
*Kennedy v. Omega Gas,* 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17)……………..17

*Kreisler v. Second Ave Diner Corp.*, 731 F.3d 184 (2nd Cir. 2013)……………………..……..5,6

*Laufer v. Laxmi & Sons, LLC*, 1:19-cv-1501-BKS-ML, DE 15 (N.D. N.Y. 5/6/20)……………..…1
*Laufer v. Nirag, Inc.*, 8:20-cv-00384-BKS-ML DE 10……………………………………………11
*Lujan v. Defenders of Wildlife*, 504 U.S. 538 (1992)……………………………………………16
*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113 ( 3d Cir. 1998)…………………………4

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724  (9th Cir. 2007)………………………………………...4

*Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal.2007)…………...…7, 20

*Parks v. Richard*, 2020 U.S. Dist. Lexis 86790  (M.D. Fla 5/1820)………………………………16

*Parks v. Shipwreck Motel, Inc.*, 2:20-cv-227, DE 11, p. 5 (M.D. Fla. 5/18/20)……………………7

*Patel v. McElroy*, 143 F.3d  56 (2nd Cir 1997)……………….…………………………..……4

*Payne v. Boston Market Corp.*, 5:12-cv-354, DE 16 (E.D.N.C. 3/12/13)…….…………………..17

*Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 998 (7th Cir. 2002)………….…………..19

*Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457  (S.D. Fla. 2018)………………………………………………..…..3, 10, 13

*Poschmann v. Fountain, TN, LLC*, 2019 U.S. Dist. Lexis 159417  (M.D. Fla. 2019)……………3

*PGA Tour v. Martin*, 532 U.S. 661 (2001)………………………………..…..…….……… 4
*Ragin v. Harry Maclowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993)……………………10

*Rizzi v. Hilton Domestic Operating Co.*, 2019 U.S. Dist Lexis 120999 (E.D.N.Y. 2019…………5

*Scott v. Cash To Go, Inc.*, 2013 U.S. Dist. LEXIS 59980 (M.D. Fla. Apr. 26, 2013)…………..…21

*Spokeo Inc. v. Robins,* 136 S.Ct. 1540 (2016)……………….……………………………..*In passim*

*United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)…………………..……………..19

**Statutes**

42 U.S.C. Section 12182(a)……………………………..……………………3,5,7,8, 12, 13

42 U.S.C. Section 12182(b)(2)(A)………………………………………….……3, 5,7, 13
….
42 U.S.C. Section 12182(a)……………………………..…….…………3,5,7,8,12,13

42 U.S.C. Section 12182(b)(2)(A)(ii)…………………………...………………………3, 13, 22

**Regulations**

28 C.F.R. Section 36.302(e)(1)……………………………..…………………………..3

28 C.F.R. Section 36.302(e)(1)(iii)(iv) and (v)……………………………………….…23

Plaintiff, by and through undersigned counsel, hereby files this Memorandum In Response To Defendant's Memorandum Of Law In Opposition To Plaintiff's Standing.

## I.      Procedural Background

The instant matter does not involve any pending motion. Rather, in *Laufer v. Laxmi & Sons, LLC*, 1:19-cv-1501-BKS-ML, DE 15 (N.D. N.Y. 5/6/20), this Court issued an Order requiring that Plaintiff file a memorandum in all pending cases explaining her standing to pursue these actions involving hotel discrimination with respect to their online reservations services (hereinafter sometimes referred to as "ORS"). On May 28, 2020, Plaintiff filed her Memorandum regarding standing.    The Court's Order did not require Plaintiff to file an additional affidavit in this case and, therefore, none was filed. Rather, Plaintiff's Memorandum was based on the sufficiency of her allegations and the law as it applies to website discrimination and standing.

Defendant did not file a motion of any kind. Rather, it filed a Memorandum Of Law In Opposition To Standing. Moreover, in her Memorandum, Plaintiff was only required to brief the Court with respect to whether the allegations set forth in the complaint established a cause of action. In other words, whether her visits to a discriminatory ORS and intent to return to the same are sufficient. As the Defendant has filed a brief which raises both legal, facial and factual challenges, and out of an abundance of caution, Plaintiff hereby accompanies this brief with her affidavit, which better explains her standing.

As set forth in her Affidavit, Exhibit A attached hereto, Laufer resided for many years in New York, has family and friends here, and frequently returns to the area and travels all over the State. When she visits, she stays in hotels. More significantly, Laufer has a system of tracking the hotels she has sued and ensuring that she returns to their ORS in each case. *Id*., para. 8. In this regard, her list sets forth every hotel she has sued, with columns indicating the dates she visited

the ORS. By this system, she revisits the ORS for each and every hotel shortly after the complaint is filed. In this case, she revisited the hotel's ORS   a few short weeks after she filed the case. Pursuant to her system, Plaintiff again revisited the ORS of each and every hotel she has sued, including the Defendant's hotel. *Id*. Once it is established (either by court order or by settlement agreement) when the hotel's service is required to become compliant, she marks that date and revisits at that time. *Id*.   Thus, pursuant to her system, Plaintiff has already revisited the hotel's discriminatory ORS twice since she filed the case. Moreover, Plaintiff plans to travel to New York once the Covid crisis subsides. *Id*., para. 5. She intends to visit her family and friends and also to travel throughout the entire state and needs to stay in hotels during her travels. *Id*. She needs compliant hotel ORS's so that she has the information she requires to make an informed decision and reserve a room at a hotel that suits her needs. *Id.*

Moreover, since the Defendant's challenge may be properly characterized as a motion, Plaintiff respectfully requests that this document be considered a memorandum in opposition, subject to the 25 page limitation set forth in Local Rule 7.1(a)(1).

## II.   Defendant's Arguments Are Without Merit

### A.   Defendant's Argument That Plaintiff Must Have Intended To Book A Room Is Without Merit

Defendant argues that Plaintiff lacks standing because she did not intend to book a room at Defendant's hotel. This argument lacks merit for two reasons. First, as a matter of law, Plaintiff's actionable injury is complete and it is not necessary for Plaintiff to have intended to book a room at the hotel. Second, Plaintiff does in fact intend to travel to New York, travel all throughout the State, and stay at hotels. Therefore, Defendant's discriminatory ORS impedes her ability to make a meaningful and knowledgeable choice of which hotels to stay in.

2

## 1.    The Law Clearly Does Not Require Intent To Book A Room

Defendant's argument is founded on the mistaken notion that the Plaintiff must be a bona fide patron, must be a client or customer, must intend to book a room at the hotel or otherwise stay at the hotel. These theories are completely incorrect in light of Supreme Court and Second Circuit case law. Conspicuously absent from Defendant's brief is any reference to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001) or *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993).   Nor does Defendant even attempt to address the fact that the laws of statutory construction prohibit the insertion of the requirement that the plaintiff intend to go to the hotel, or the host of cases cited in Plaintiff's Memorandum on Standing which reject the intent-to-book- a-room" argument.[1]

Indeed, the Regulation and governing subsections are clear and unequivocal. The Regulation requires that the defendant's ORS identify and allow for booking of accessible rooms and provide information regarding accessibility at the hotel. 28 C.F.R. Section 36.302(e)(1). Defendant does not dispute that it failed to comply with this requirement. This, therefore, violates 42 U.S.C. Section 12182(b)(2)(A)(ii), and is defined as "discrimination" by 42 U.S.C. Section 12182(b)(2)(A). Again in turn, this then violates the general prohibition under 42 U.S.C. Section 12182(a) which states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of .... [a] service[]... of any place of public accommodation." 42 U.S.C. Section 12188(a) then gives the right to sue to "any person who is being subjected to discrimination..." Nowhere in any of these provisions is there any language that supports the

---

[1]In addition to the cases cited by Plaintiff which held that intent to visit a hotel's ORS is sufficient without the need to also intend to book a room, see also *Poschmann v. Fountain, TN, LLC*, 2019 U.S. Dist. Lexis 159417, **5-6 (M.D. Fla. 2019); *Poschmann v. Coral Reef of Key Biscayne Dev., Inc*. 2018 U.S. Dist. Lexis 87457, *3 (S.D. Fla. 2018).

3

imposition of the additional requirement proposed by Defendant.    Courts cannot add language to a statute. *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1334 (11th Cir. 2013).    A court's duty is to "say what statutory language means, note what it should mean, and not what it would mean if we had drafted it." *Id*. See also *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008)("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."). Defendant would have this Court violate the principle enunciated by the Supreme Court    in *INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987) as follows:

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

See also *Patel v. McElroy*, 143 F.3d 56, 60 (2nd. Cir 1997).        Defendant's    interpretation would have this Court take the "client or customer" requirement found in 42 U.S.C. 12182(b)(1)(A) and insert it into one of the subsections that govern the instant case - where such language is conspicuously missing. This is prohibited. *PGA Tour*, 532 U.S. at 678-79; *Menkowitz v. Pottstown Mem'l Med. Ctr*., 154 F.3d 113, 121-22( 3d Cir. 1998); *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 733 (9th Cir. 2007); *Marod*, 733 F.3d at 1333.    Defendant's interpretation would also have this Court take the "bona fide" requirement found in the Fair Housing Act and insert it into one of the subsections that govern the instant case - where such language is conspicuously missing. This is prohibited. *Marod*, 733 F.3d at 1330-31; *Havens Realty, 455 U.S. at 374*.

Moreover, imposing any requirement that the defendant's discriminatory "service" can only be actionable if it additionally prevents a disabled person "from" any additional service or good improperly takes such language from 42 U.S.C. Section 12182(b)(2)(A)(i) and inserts it into the provisions that govern here. Such is prohibited. *Cardoza—Fonseca*, 480 U.S. at 432.

In sum, a court cannot add a requirement to the regulation or governing subsections,

especially where such an additional requirement can be found in language of other subsections and statutes, but missing in anything that applies to the case at bar.

The cases cited by Defendant, such as *Rizzi v. Hilton Domestic Operating Co.*, 2019 U.S. Dist Lexis 120999 E.D.N.Y. 2019), *Hernandez v. Caesars License Co.,* LLC, 2019 U.S. Dist. Lexis 172456 (D.N. J. 2019), are unavailing because they completely fail to acknowledge or analyze *PGA Tour*, *Havens Realty*, *Cardoza-Fonseca*, *Ragin*, or the applicable rules of statutory analysis and, therefore, badly run afoul of established precedent to which they, and this Court, are bound to follow. Moreover, Defendant entirely fails to explain away the fact that failure to comply with the Regulation constitutes "discrimination" as set forth in Subsection 12182(b)(2)(A) and failure to provide "full and equal enjoyment" of Defendant's service, in violation of Subsection 12182(a). Nor does Defendant, or any cases it cites, address the overwhelming body of case law cited in Plaintiff's earlier Memorandum, which hold that reviewing a discriminatory website is the "injury-in-fact".[2]

Indeed, the *Hernandez* court's holding that intent to return is required completely misread the two cases it cited in support of this proposition:   *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 **9-10 (S.D.N.Y. 2019) and *Poschman v. Coral Reef Of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457   (S.D. Fla. 5/22/18). Although the *Juscinska* court noted that the plaintiff intended to book a room, it never held that this was a requirement for

---

[2]At. P. 10 of its brief, Defendant states: "Having made no attempt to make a reservation, plaintiff cannot establish standing on the basis of having encountered unlawful barriers, or that she was deterred from using the property, See, *Kreisler*, 731 F.3d at 188; *Feltzin v. Triangle Properties #1, LLC*, ...2016 U.S. Dist Lexis 192681 (E.D. N.Y. Dec. 15, 2016)." By this passage, Defendant improperly claims, or at least implies, that these two cases were about ORS discrimination by hotels. They were not. These cases instead were about discrimination encountered at physical properties and had nothing to do with ORS discrimination.

standing. More significantly, the *Poschmann* decision stands for the proposition that solely testing a website system for compliance satisfies standing. *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8 ("Plaintiff intends to return to the Website within thirty days to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel *or* **to test the Hotel's Website reservation system for its compliance with the ADA**.")(emphasis added).

Thus, other than *Hernandez*, there no case which holds that intent to rent a room is required to sustain a case of ORS discrimination. As stated above, the *Hernandez* opinion is based on a misreading of the two cases it cited as supportive of its holding.

Defendant's arguments and the cases it cites contradict Supreme Court and Second Circuit precedent. Because the ADA affords relief to "any person" who suffers discrimination and provides that "no individual shall" be discriminated against, testers have standing, regardless of their intent. *Marod*, passim; *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014).   See also *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2nd Cir. 6/29/2011) (Summary Order)(holding that Harty's intent to return as a tester contributes to satisfying his pleading requirements). Indeed, this language is substantially similar to the language which the Supreme Court held affords tester standing in *Havens Realty*. Marod, 733 F.3d at 1332-33. It is for the reasons cited above that the Supreme Court in *Havens Realty* and Second Circuit in *Ragin* held that testers have standing to sue for informational discrimination even if they had no intention of doing anything with that information.

2.      **Physical Property Cases Are Irrelevant**

Defendant's references to physical property cases are without merit. In physical property cases such as *Kreisler v. Second Ave Diner Corp.*, 731 F.3d 184 (2nd Cir. 2013), the injunctive relief sought by the plaintiff involved remediation of physical conditions located at a physical

6

property. In such cases, the plaintiff was only injured when he or she personally visited the physical property and encountered discriminatory conditions located there. In such cases, the plaintiffs could only again encounter discrimination by traveling back to the subject properties in the future. As one New York Court held in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), such cases are irrelevant because the injury occurs when the plaintiff views the discriminatory website. This injury occurs in the plaintiff's own home.   For this reason, cases involving injuries which only occur when the plaintiff visits the subject property are completely irrelevant.

### 3.      Reliance On The Griffin Case Is Improper

Plaintiff submits that reliance on *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019) is improper because it is flawed[3]. In *Griffin,* the court held that a disabled plaintiff has a cause of action for commercial website discrimination only if that website prevented him from access to the defendant's service. *Id.*, at 653. What the court completely overlooked was the fact that the website was itself already a "service" of the place of public accommodation. See *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).     42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the

---

[3]*Griffin* involved the application of the ADA to commercial website compatibility with screen reader software, an area to which no Department of Justice regulation has been promulgated and, therefore, courts have less guidance in applying the law. By contrast, the instant action involves a duly promulgated regulation which clearly imposes liability and responsibilities with no requirement of any physical nexus between the discriminatory website and physical hotel. ORS's are subject to the Regulation, and their failure to comply constitutes "discrimination". 42 U.S.C. Section 12182(b)(2)(A) and is therefore actionable under Section 12188(a).

basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..." Because the websites are a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[4]   Once that occurs, all the elements are satisfied to establish a cause of action. Conspicuously absent from the Regulation or the Statute is any requirement that the disabled person must additionally intend to be a client or customer, bona fide patron or, in this case, book a room and stay at the hotel as a requirement for a cause of action.   The *Griffin* court ignored the fact that when a disabled person encounters a discriminatory website, he already is deprived "in the full and equal enjoyment of [a service] ... of [the] place of public accommodation" and that he already suffered an injury. In short, the *Griffin* court misconstrued the locus of injury as necessarily being AT the physical facility. The court thus rewrote 42 U.S.C. Section 12182(a) to say that a disabled person only has a cause of action if they are deprived "full and equal enjoyment of a service **OF** a place of public accommodation which, in turn, further deprives them of full and equal enjoyment of an additional good or service **AT** the place of public accommodation." This clearly and improperly rewrites the statute by adding and compounding requirements which Congress deliberately left out.

The *Griffin* opinion is from the Fourth Circuit and, therefore, not binding precedent.   By contrast, this Court is bound to follow the three cases on point issued by the Supreme Court and Second Circuit, with which *Griffin* is in conflict.   First, the *Griffin* opinion runs afoul of *PGA Tour*, 532 U.S. at 678-79, which applied the rules of statutory construction in holding that the disabled plaintiff does not need to be a client or customer of the defendant. Second, the *Griffin* opinion also is in conflict with *Havens Realty*, which held that black testers had standing to sue

---

[4]An ORS may also be characterized as a privilege or advantage, also referenced in Subsection 12182(a).

8

over discriminatory information even though they did not intend to make use of that information. For example, the *Griffin* court stated: "Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant." This conclusion is completely incorrect in light of *Havens Realty*, which stands for the opposite proposition: specifically, that intent to go to the property (or rent an apartment there) was entirely unnecessary and that encountering the discrimination defined by the plain words of the statute were sufficient. On this point, the *Havens Realty* Court opined as follows:

> In the present context, "testers" are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices. Section 804(d) states that it is unlawful for an individual or firm covered by the Act "[to] represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available," 42 U. S. C. § 3604(d) (emphasis added), a prohibition made enforceable through the creation of an explicit cause of action in § 812(a) of the Act, 42 U. S. C. § 3612(a). Congress has thus conferred on all "persons" a legal right to truthful information about available housing.5

*Havens Realty*, 455 U.S. at 373. The Court went on to reason:

> This congressional intention cannot be overlooked in determining whether testers have standing to sue. As we have previously recognized, "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [422 U.S. 490] at 500 [(1975)], quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S. 547,

5In *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-33 (11th Cir. 2013), the Eleventh Circuit followed this analysis in holding that testers have standing for Title III ADA cases because the statute's substantially similar language that "no individual shall.." and "any person discriminated against..." afforded tester standing.

558   (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam). Whereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, 42 U. S. C. § 3604(a), required that there be a "bona fide offer" to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d).   *Havens Realty*, 455 U.S. at 374.

Third, the *Griffin* opinion is in conflict with the holding of *Ragin v. Harry Maclowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993). There, Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The Court rejected the defendants argument, reasoning as follows:

> The defendants argue in their cross appeal that the individual plaintiffs have suffered no injury because they were not in the market for housing when they saw these ads but instead actively were combing the newspapers looking for these ads in order to bring a section 804(c) action. For the purpose of our discussion, we will assume that the plaintiffs were not actively looking for an apartment when they viewed the defendants' ads.
>
> The Supreme Court addressed the issue of private party standing to sue in FHA actions in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, [] (1982). In *Havens Realty*, the defendants argued that "testers"--individuals who, without the intent to rent an apartment, pose as renters for the purpose of collecting evidence of unlawful steering away of prospective minority purchasers by real estate agents--lacked standing to sue for violations of section 804(d) of the Act. Section 804(d) makes it unlawful for a person "to represent to any person because of race . . . that any dwelling is not available for . . . rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d) (emphasis added). The Court rejected the defendants' argument and held that a tester who "may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home," had standing to sue by virtue of his allegation that his statutorily created right to truthful information about the availability of housing was violated. *Havens Realty,* 455 U.S. at 374.   The Court based its conclusion on the long-held principle that "the actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" Id. at 373 (quoting *Warth v. Seldin*, 422 U.S. 490, 500, [] (1975)); see also *Lujan*, 112 S. Ct. at 2145.
>
> Here, Judge Sweet found that "a plaintiff who proves that she read the challenged advertisements and that the advertisements would indicate a racial preference to the ordinary reader 'has suffered injury in precisely the form the [FHA] was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions.'" 801 F. Supp. at 1229 (quoting *Havens Realty*, 455 U.S. at 373-74). We agree. There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. See *Saunders v.*

10

*General Servs. Corp.*, 659 F. Supp. 1042, 1053 (E.D. Va. 1987).    Given the private
attorney general provision in section 813(a) of the Act and the Supreme Court's holding in
*Havens Realty*, the district court was constrained to find that the individual plaintiffs had
standing to bring this action in federal court.
*Ragin*, 6 F.3d at 904.

These cases relied heavily on the rules of statutory construction and noted that restrictive

language contained in other statutes or subsections was absent from the subsections governing

their respective cases and, therefore, such restrictive language could not be applied.    Thus, it is

highly significant that the physical nexus requirement found in Subsection 12182(b)(2)(A)(i)

("from"), cannot be judicially imposed in another subsection where it is conspicuously absent. Nor

can the "client or customer" requirement be so copied from one subsection and inserted into

another.

### 4.    *Spokeo* Does Not Diminish Plaintiff's Rights

At p. 6 of its Brief, Defendant states:

"In the leading case of *Spokeo, Inc. v. Robins*, the Court stated, within the context of a
"tester" under the ADA, that although tester status does not defeat standing, 'it does not
automatically confer it either 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)."

Defendant's statement in this regard completely misrepresents *Spokeo*, as *Spokeo* is

silent about the ADA and testers and did not say the passage Defendant quotes. Defendant's

careless misstatement is identical to that filed by a different law firm in *Laufer v. Nirag, Inc.*, 8:20-

cv-00384-BKS-ML DE 10, p. 6, indicating that at least some defendants' attorneys are copying

and pasting from the briefs of others without checking the accuracy of their citations. In any event,

*Spokeo,* does not negate Plaintiff's right to sue, even in the absence of any intent to book a room

at a hotel.

### a.    *Havens Realty* Remains On Point And Applicable

First, the *Spokeo* Court refrained from actually holding that the plaintiff therein did not

suffer actionable injury, stating: "We take no position as to whether the Ninth Circuit's ultimate conclusion — that Robins adequately alleged an injury in fact — was correct." *Spokeo*, 136 S.Ct. at 1540. Critically, the *Spokeo* Court did not overturn or narrow its prior holding in *Havens Realty*. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").
> *Spokeo,* 136 S.Ct. At 1549-50.

In the *Akins* decision referenced by *Spokeo*, the Supreme Court in turn referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).
>  *Akins*, 524 U.S. at 21.

Thus, through *Spokeo* and *Akins*, the Supreme Court recognized that *Havens Realty* remains valid law, being neither overturned nor narrowed.   Plaintiff submits that *Havens Realty*, and the Second Circuit case which followed *Havens Realty*, *Ragin,* are directly on point and remain valid and undiminished.   As in the statute in *Havens Realty*, the ADA states that "No individual shall be discriminated against...". 42 U.S.C. Section 12182(a). Moreover, the ADA further provides that "any person who is being subjected to discrimination on the basis of disability..." has

the right to sue. 42 U.S.C. Section 12188(a).[6]   In short, the statutory rights and remedies under the ADA are substantially similar to those at issue in *Havens Realty*. Like the FHA in *Havens Realty*, Congress created a statutory right to sue and created an injury, which includes a disabled person's encounter with a discriminatory service - to which the DOJ then included ORS's. No gaps are left.   A discriminatory ORS constitutes an injury in two ways. First, it is a failure to provide full and equal enjoyment of a service, proscribed by Subsection 12182(a). Second, Subsection 12182(b)(2)(A) states that this   constitutes "discrimination", all of which are actionable for "any person" by virtue of Subsection 12188(a).   Nor does the *Spokeo* opinion diminish, reverse or narrow the Second Circuit's holding in *Ragin,* which followed *Havens Realty*. Thus, both the *Havens Realty* and *Ragin* opinions stand for the proposition that the receipt of discriminatory information constitutes actionable injury even if the intended recipient had no intention of using that information for any additional purpose. The plaintiff's encounter with defendant's discriminatory ORS was, by itself, actionable.

### b.   The "Injury" At Issue In *Spokeo* Starkly Contrasts With The Plaintiff's Injury

The injury discussed in *Spokeo* and the Plaintiff's injury at issue herein stand in stark contrast. Whereas the regulation and statutory provision in the ADA draw a clear line between a disabled person's encounter with a discriminatory ORS and his injury and right to sue, no such clear line was established for the *Spokeo* plaintiff.   For injury under the applicable provisions of the ADA, the Regulation and applicable subsections completely spell out a cause of action.

---

[6]As explained previously, failure to comply with the regulation governing online hotel reservations services constitutes "discrimination", pursuant to 42 U.S.C. Section 12182(b)(2)(A)(ii).

14

Moreover, the question as to whether any additional requirements can be judicially imposed are answered in the negative by the fact that such "client or customer" language or physical nexus requirement language is contained elsewhere, but omitted here.   Thus, a disabled plaintiff's rights, the definition of injury, right to sue, and what additional requirements must be excluded from applicable provisions, are unambiguously clear in the ADA.

By contrast, the connection between the plaintiff's allegations, injury and statutory rights discussed in *Spokeo* were vague. First, unlike the ADA or the *Havens Realty* case,   the *Spokeo* case did not involve an anti-discrimination statute. Rather it involved the Fair Credit Reporting Act. In the ADA, the statute and Regulation are intended to prohibit the conveyance of discriminatory information to a disabled person. There, the intended recipients of the information and the members of the protected class are the same. As in *Havens Realty* and *Ragin*, the injury naturally occurs when the discriminatory information is received by the plaintiff (the member of the protected class).    In the FCRA, by contrast, the intended recipients of the information are third party creditors and prospective employers, an entirely different class of persons from those the statute was designed to protect.    In other words, there is an additional and indirect causal link which must occur before the member of the protected class suffers harm.     The FCRA is essentially a defamation statute. For defamation to occur, a third party must receive the information to the detriment of a member of the protected class. In *Spokeo*, there was no indication that any third party creditors received the false information at issue: only that the plaintiff "learned of these inaccuracies" and thereupon filed suit. *Spokeo*, 136 S.Ct. at 1544.

Most significantly, the prerequisites for a civil suit differ significantly between *Spokeo* and the ADA. Whereas the ADA's 12188(a) provides a remedy to "any person who is being subjected

to discrimination...", the *Spokeo* Court described the FCRA's statutory enforcement provision as follows: "The Act also provides that "[a]ny person who willfully fails to comply with any requirement   [of the Act] with respect to any [individual is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. *Spokeo*, 136 S.Ct. at 1545. There is nothing in the *Spokeo* opinion indicating whether or not the plaintiff satisfied this provision, thus entitling him to sue.

To summarize, the ADA's actionable injury is clear. A disabled person who encounters a discriminatory online reservation is "any person subjected to discrimination" and has the express statutory right to sue. The injury of "discrimination" occurs when the disabled person reviews the discriminatory ORS. Indeed, the sole purpose of the Regulation is to provide the required information to a disabled person.   By contrast, the FCRA protects one class (the consumer) regarding incorrect information provided to a different class (creditors, employers or romantic interests). The plaintiff/consumer's review of his own inaccurate information does not necessarily constitute injury.

On the one hand, the Plaintiff's rights under the ADA's are substantially identical to those discussed in *Havens Realty* and *Ragin*. On the other hand, the statutory rights at issue herein differ substantially from that discussed in *Spokeo*. Therefore, Plaintiff submits that *Havens Realty* governs and *Spokeo* is inapposite.

### B.    Plaintiff Satisfies Even The Intent-To-Book-A-Room Requirement

Even in the absence of *Havens Realty*,   *Ragin*, or the rules of statutory construction, Plaintiff satisfies the requirement of such flawed cases as *Hernandez* because she does indeed

16

intend to travel to New York to visit her family, travel around the entire state and stay in hotels. Laufer Affid. Para. 5. In making such plans, she needs to be able to review compliant hotel ORS's so that she can make meaningful choices. *Id*. Therefore, this discriminatory ORS causes Plaintiff additional injury by impeding her ability to make knowledgeable plans. Thus, Plaintiff has standing under *Juscinzka v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 6/3/2019)[7]. For example, in *Gonzalez v. Bahar Corp*., 2019 U.S. Dist. Lexis 58567, *6 (E.D.N.Y. 2019), one court in the Eastern District of New York stated that the issue is the plaintiff's intent to return to the website, rather than the physical property. The court stated: "Here, [plaintiff's] desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan v. Defenders of Wildlife*, 504 U.S. 538 (1992)], [plaintiff] is not alleging an intent to return to a physical location, let alone a distant one.

Moreover, Plaintiff has a system by which she lists and thereby returns to the ORS for each and every hotel she sues. Laufer Affid., para. 8. In this case, and pursuant to her system, Plaintiff visited the Defendant's discriminatory ORS multiple times prior to filing this case and already visited it afterward. *Id*. Thus, she was already true to her word    when she averred in her Complaint that she intended to revisit the websites in the near future. Pursuant to her system, she also rechecked the websites of each and every hotel on her list, thus revisiting the online service for this hotel again. *Id*. Thus, pursuant to her system, Plaintiff has already revisited the hotel's

---

[7]The *Juscinzka* plaintiff indicated an intent to stay in nearby hotels as part of a "staycation". However, courts addressing the issue of a plaintiff's distance to a hotel typically note that the purpose of a hotel is to cater to distant travelers. See, e.g. *Bryan v. Florencia Park*, LLC, 2019 U.S. Dist. Lexis 156684, * 7 (M.D.Fla. 2019); *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790, *7 (M.D. Fla 5/1820).

discriminatory ORS twice since she filed the case.   In   *Richard*., 2020 U.S. Dist. Lexis 86790, at *6, one court held that such a system satisfies intent to return requirement. Moreover, at least two courts have held that a plaintiff's post-complaint return establishes standing. See *Payne v. Boston Market Corp*., 5:12-cv-354, DE 16 (E.D.N.C. 3/12/13); *Kennedy v. Omega Gas,* 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

### C.    Defendant's Claims Regarding ORS Compliance Are Meritless

The Defendant's claims that its ORS is ADA compliant. This argument should be stricken and, in the alternative, is wholly without merit. First, Defendant's argument is not part of any pending motion and it clearly exceeds the scope of the Court's Order, which was limited to standing.   Second, Defendant makes incoherent arguments beginning on p. 3. Defendant makes a confused reference about the Court's comments on the ORS located on Booking.com, and that Plaintiff's Memorandum of Law concedes that it is ADA compliant.   Defendant's argument makes no sense, for the Court's comments to which Defendant refers were from the *Laxmi* case and were confined to the ORS utilized by the *Laxmi* defendant. That has nothing to do with the instant case. Here, Plaintiff has conceded nothing.   Defendant's attempts to cite this Court's comments about the ORS of a completely different hotel in a completely different case, and argue that they pertain to the instant case, are completely nonsensical and grossly misguided.

Third, Defendant is making deliberate misrepresentations to this Court. According to Defendant, Plaintiff's allegations regarding the Defendant's ORS are "plainly false". Defendant's brief, p. 4.   It is Defendant who is being plainly false because Defendant is representing to this Court that its ORS has always been compliant. This is untrue. Indeed, Plaintiff hereby submits screenshots, as Exhibit A-1, that were taken of every part of every page of the websites referenced

18

in the Complaint: namely, Booking.com, Hotels.com, Expedia, Orbitz and Agoda.com. As those

screenshots plainly demonstrate, Defendant is lying to this Court. Contrary to Defendant's factual

misrepresentations, none of these websites identified any accessible rooms, allowed for booking

of accessible rooms, or provided any information whatsoever about accessibility.   Thus

Defendant is lying. One such example is Defendant's statement that it does not use Agoda.com.

Defendant's brief, p. 7, n. 1. This is completely untrue. The screenshots submitted as Exhibit A-1

clearly show that this hotel advertised its rooms through Agoda.com. In short, Defendant lied, and

merely temporarily closed down its Agoda site in order to defeat this lawsuit. Closing something

down to defeat a lawsuit does not moot a case.    *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.,*

*Inc.*, 528 U.S. 167, 189 (2000)(closing factory did not moot lawsuit); *City of Los Angeles v. Lyons*,

461 U.S. 95 (1983)(moratorium on choke holds did not moot suit); *Access For America, Inc. v.*

*Zicheck Investments, Ltd.*, Case No. 8:01-cv-2228, DE 51, p. 4    (M.D.Fla. 3/13/2003)(closing

restroom did not moot case).

Comparing Plaintiff's screenshots to Defendant's exhibits reveals that Defendant made

changes to its ORS in response to this lawsuit.    In other words, a review of the 100 screenshots

taken of the Defendant's ORS through the various websites indicate that no accessible rooms were

listed or bookable and there was NO information whatsoever about accessibility.

The reason Defendant is lying to this Court is obviously to characterize the issue as one of

standing rather than of mootness, which places the "formidable burden" on the defendant. "A

defendant claiming that its voluntary compliance moots a case bears the formidable burden of

showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be

expected to recur."   *Friends of the Earth, Inc.*, 528 U.S. at 190.   As the United States Supreme

19

Court held:

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.
> *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953).

According to the "general rule" a mootness defense should "rarely" succeed.   See *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 998 (7th Cir. 2002)("The general rule is that voluntary cessation of a challenged practice rarely moots a federal case.");   *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)(same);   *Friends of The Earth*, 528 U.S. at 189 ("a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66-67 (1987) ("Mootness doctrine ... protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.' "). Put another way, the standard for determining whether a defendant's voluntary cessation of illegal behavior moots a case is "stringent".   *Friends Of The Earth*, 528 U.S. at 189.

An ADA case involving website discrimination cannot be mooted. In *Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018), the Eleventh Circuit rejected a defendant's claim of mootness with respect to a discrimination claim involving a commercial website's compatibility with screen reader software and issued a warning to defendants who seek to moot a website case:

> Relatedly, Haynes requested in his complaint that the district court direct Hooters to continually update and maintain its website to ensure that it remains fully accessible. Accordingly, even if Hooters' website becomes ADA compliant, Haynes seeks injunctive relief requiring Hooters to maintain the website in compliant condition. Thus, ... , there is still a live controversy about whether Haynes can receive an injunction to force Hooters to make its website ADA compliant or to maintain it as such. Therefore, this case is not moot.

20

*Hooters*, 893 F.3d at 784 (Emphasis supplied). Other courts have held that ADA cases involving

commercial websites cannot be mooted.   *See, e.g.,   Nat'l Fed'n of the Blind v. Target Corp.*, 582

F. Supp. 2d 1185 (N.D. Cal. Sept. 28, 2007) (cannot moot because of the "potential for new

pages").   Courts have also held that a hotel cannot moot a discrimination case involving hotel

online reservations discrimination.   *Brooke v. A-Ventures, LLC*, 2017 U.S. Dist. LEXIS 193259

\*\* 6-7 (D. Ariz. Nov. 22, 2017).   In *Brooke*, the defendant had made assurances of future

compliance similar to those made by the instant Defendant in the case at bar. The court rejected

these claims on the basis that:

> "Similarly here, all defendant has done is change its website and adopt a new internal
>  policy, both of which could easily be changed in the future. Defendant has not met its
>  heavy burden of showing that it is absolutely clear that its wrongful behavior could not
>  reasonably be expected to recur. This case is not moot."

In *Kennedy v. Floridian Motel, Inc*., 2018 U.S. Dist. Lexis 207984, fn. 3 (S.D. Fla. 2018),

one court in the Southern District cited *Hooters* in holding that a defendant could not moot a hotel

online discrimination case. In this regard, the court stated:

> Plaintiff's amended complaint seeks an injunction not only requiring Defendant to bring
> the Website into ADA compliance, but also "to implement a policy to monitor and maintain
> the website to ensure that it remains in compliance with said requirement." [.] Thus, even
> if the Website were in full compliance, the case would not be moot. *Campbell-Ewald Co.
> v. Gomez*, 136 S. Ct. 663, 669, [] (2016) (explaining that mootness occurs "only when it is
> impossible for a court to grant any effectual relief whatever to the prevailing party. As long
> as the parties have a concrete interest, however small, in the outcome of the litigation, the
> case is not moot.") (citations and internal quotation marks omitted). Second, "a defendant
> claiming that its voluntary compliance moots a case bears the formidable burden of
> showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be
> expected to recur." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91, [] (2013) (quotation
> omitted). Although Defendant asserts that the Website is fully in compliance with the
> ADA, its sole explanation for why the wrongful behavior will not recur is "the subject
> Website is infrequently changed; it will accordingly not be changed back in order to
> remove the additional features that were added, regardless of whether an injunction is
> issued." [.]This is not sufficient to meet Defendant's formidable burden - there is nothing

21

preventing Defendant from modifying the Website so that it is no longer in compliance with § 36.302(e). Thus, the Court finds that the action is not moot.

In the context of the ADA, physical property and website cases stand apart from one another. ADA website cases are distinguishable from other ADA cases in which district courts grant mootness dismissals with greater readiness. In this regard, a prior opinion rendered by another court in this District sheds light:

> "In ADA cases involving architectural barriers remedied by structural changes, some courts have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back." *Scott v. Cash To Go, Inc.*, No. 6:13-cv-142-Orl-37KRS, 2013 U.S. Dist. LEXIS 59980, 2013 WL 1786640, at *2 n.2 (M.D. Fla. Apr. 26, 2013) (citing *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) ("The alleged discrimination cannot reasonably be expected to recur because 'structural modifications ... are unlikely to be altered in the future.'" (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997)))). "Such cases can be contrasted with those where ADA non-compliance flows from an easily changeable policy." Id. (citing *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 (11th Cir. 2007) ("If we conclude that her claims are moot, then should MRN determine that future litigation is unlikely, it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal.")); see also *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 97 (D.D.C. 2014) ("'[G]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of  their alleged ADA violations is "nearly impossible."'" (quoting *Feldman v. Pro Football, Inc*., 419 F. App'x 381 (4th Cir. 2011)…. Courts also reject mootness challenges where the claimed ADA-corrective changes "consist[] largely of promises that [the defendant] will fulfill in the future." *Gropper*, 12 F. Supp. 3d [664] at 670 [(S.D. N.Y. 2014)] (emphasis in original). *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D. N.Y. 2016).

The Court is also referred to *Houston v. 7-Eleven, Inc*., 2014 U.S. Dist. LEXIS 12209, at **5-6 (S.D. Fla. 1/31/2014) (Scola, J.)(emphasis added)(emphasizing that ADA cases involving structural barriers are a unique subset of the voluntary cessation doctrine because they are permanent in nature and not likely to be undone);   *Scott v. Cash To Go, Inc*., 2013 U.S. Dist. LEXIS 59980, n. 2 (M.D. Fla. Apr. 26, 2013)(recognizing the importance in assessing mootness whether or not remediations were structural and therefore permanent). As explained in *7-Eleven*,

22

physical barrier cases involving permanent, structural remediations are an exception to *Sheely*. Thus, ADA cases involving structural issues are fully distinguishable from ADA cases involving non-structural forms of discrimination because structural remediations are permanent.   Websites, by contrast, are impermanent and fluid. They are constantly revised, updated, edited, with new pages being added and others being replaced or deleted. This is due to changing technology, presentation, marketing, specials, changes in room pricing, changes in amenities, business announcements,   service changes, and an inexhaustive list of reasons for constant modification and alteration.   A website that is compliant one day may become completely non-compliant the next day. In the case of an ORS, there is a constant interaction and cross flow of information between the hotel and the reservations systems, including the third parties, regarding such items as price changes and room availability. Moreover, a hotel must continue to take affirmative steps to ensure that the designated accessible guest rooms are blocked from booking by the general public and are instead set aside for disabled persons. In the alternative, in the case at bar all the defendant has to do is press a button on its computer and its discriminatory website will be reposted, or simply cease continuing to ensure that accessible rooms are identified and bookable.[8] Moreover, the structural cases involving mootness are governed by an entirely different subsection of the Statute from the Subsections involving websites: namely the architectural barriers subsection, 42 U.S.C. Section 12182(b)(2)(A)(iv). By contrast, a hotel online reservations system is governed by Subsection 42 U.S.C. Section 12182(b)(2)(A)(ii), which defines this form of

---

[8]*See also Heard v. Statue Cruises LLC*, 2017 U.S. Dist. LEXIS 98665 (S.D.N.Y. June 26, 2017)(a defendant cannot moot a case because the defendant could simply cease to implement the measures to ensure continued compliance in the future).

23

discrimination as a failure of "policy, practice and procedure".

Unlike the defendant in *Gwaltney*. Defendant is not claiming that it has reformed, ceased the discrimination, or changed its ways. Rather, Defendant has brazenly lied to this Court that it was always compliant in the first place and conceals the fact that it made revisions in response to this lawsuit in order to divest this Court of jurisdiction. Thus, Defendant falls woefully short of meeting is "formidable burden". For instance, Defendant offers no evidence that it blocks rooms so that only disabled persons may reserve them - a requirement of 28 C.F.R. 36.302(e)(1)(iii), (iv) and (v).

Nor does Defendant provide any evidence that the information it hastily posted on its websites is accurate. The DOJ, which promulgated the Regulation, issued a Guideline stating that: "even when information is provided it often is found to be incorrect upon arrival." Part 36 Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities, p. 77, Exhibit B attached hereto. The DOJ Guideline provides that a hotel's ORS must indicate whether conditions at the hotel are accessible. If the hotel is built in compliance with the applicable ADA Standards For Accessible Design, then it suffices to identify such features as "accessible." *Id*., p. 78. However, for features that do not comply with the applicable ADA Standards, the ORS must identify those features and describe their measurements or conditions. *Id*. Defendant has provided no evidence or expert testimony that its website accurately describes the conditions at the hotel, whether they comply or deviate from the applicable ADA standards set forth in either the ADAAGs or 2010 ADA standards for Accessible Design.

In support of its claims, Defendant again misleadingly cites two authorities: neither of which support Defendant's arguments. First, Defendant cites *Barnes v. Marriott Hotel Servs., Inc.*,

24

2017 U.S. Dist. Lexis 22588 (N.D.Cal. 2017), as to the sort of information that is required. What Defendant deliberately neglected to inform this Court is that the *Barnes* case applied to the sort of information required of hotels constructed pursuant to the 1991 or later ADA standards. By contrast, Defendant's hotel was constructed in 1988 - prior to the ADA. See Exhibit C. Thus, Defendant is obligated to provide information with far greater detail, which includes identifying every condition that does not conform to the applicable ADA standards. Thus, Defendant has yet again omitted a material fact with the obvious intention of misleading this Court.

Lastly, Defendant's reference to the DOJ's statements regarding Web Information, Defendant's brief, at p. 9, n. 3, is also deliberately misleading. (Actually, this can be found at https://www.federalregister.gov/documents/2010/07/26/2010-18334/nondiscrimination-on-the-basis-of-disability-accessibility-of-web-information-and-services-of-state.) Contrary to Defendant's claims, this document has nothing to do with hotel online reservations systems or the Regulation. Rather, it is about whether or not commercial websites must be compatible with screen reader software and therefore navigable by vision impaired individuals. Indeed, requiring a disabled person to use the telephone to call a hotel to make up for shortcomings in an ORS violates the hotel's obligation to provide "full and equal" treatment and "in the same manner". In *Poschman v. Coral Reef Of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457, \*\*10-11 (S.D. Fla. 5/22/18); *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 \*\*9-10 (S.D.N.Y. 2019)(ability to telephone or email hotel is not "same manner" and therefore not a viable defense).

25

**III.     Conclusion**

For the foregoing reasons, Defendant's arguments are entirely lacking in merit.

Respectfully submitted,

By: /s/ Peter Sverd
Peter Sverd
Law Offices of Peter Sverd, PLLC
225 Broadway
Suite 613
New York, NY 10007
646-751-8743
Email: psverd@sverdlawfirm.com

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system this the 8th day of July, 2020.

By: /s/ Peter Sverd